8 F.3d 821
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis Franklin EAST, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Terry Lynn Jackson, a/k/a TJ, Defendant-Appellant.
 Nos. 92-5556, 92-5577.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 23, 1993.
Decided: October 27, 1993.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Salisbury.
 David F. Tamer, Winston-Salem, North Carolina; Robert L. McClellan, Ivey, Ivey, McClellan & Gatton, Greensboro, North Carolina, for Appellants.
 Benjamin H. White, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Curtis Franklin East and Terry Lynn ("TJ") Jackson were among several defendants charged with conspiracy to possess marijuana with intent to distribute and to distribute marijuana in violation of 21 U.S.C.A. §§ 846, 841 (West 1981 & Supp. 1992). After three days of trial, East and Jackson entered guilty pleas. They appeal the 120month sentences they received. We affirm.
 
 
 2
 East and Jackson contend that the district court clearly erred in finding that they were accountable for more than 1000 kilograms of marijuana which was transported from Texas to North Carolina and Georgia in the course of the conspiracy. The Appellants worked as truck drivers for a co-defendant, Denver Martin, who fled after pleading guilty at the same time East and Jackson did, and remains a fugitive. At the sentencing hearing, East and Jackson testified about when they began transporting marijuana, how many trips they made, and how much marijuana they estimated they carried. They asserted that during the trial they became aware for the first time that Martin was secretly transporting more marijuana than they knew so as to avoid sharing the profits with them.
 
 
 3
 The government's evidence included records seized from the El Paso, Texas, residence of Francisco Carrillo, the source of the marijuana, as well as the trial testimony of Thomas Moore, a North Carolina customer of Carrillo's. Moore's testimony about the number and size of deliveries made to him by Martin, East, and Jackson was at variance with the Defendants' testimony at sentencing. The Defendants admitted that they had been introduced to Moore as equal partners with Martin.
 
 
 4
 The district court first determined that, even if Martin had made surreptitious deliveries of marijuana to Moore, those deliveries were within the scope of the agreement made by East and Jackson and reasonably foreseeable to them, and were properly considered as relevant conduct. United States Sentencing Commission, Guidelines Manual, § 1B1.3, comment. (n.1) (Nov. 1991). Whether conduct of coconspirators was reasonably foreseeable to the defendant is a factual question reviewed for clear error. United States v. Vinson, 886 F.2d 740 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990). The court's finding in this case is not clearly erroneous because, as the district court observed, the evidence was that East and Jackson had agreed to transport as much marijuana as Martin could arrange. If Martin made some deliveries by himself so as to keep all the profit, the only aspect unforeseeable to East and Jackson was that Martin would try to cheat them of their agreed share in the profits.
 
 
 5
 In making the determination that over 1000 kilograms of marijuana was attributable to East and Jackson, the district court relied on specific deliveries which Moore testified about at trial, and which were generally corroborated by the records found in Carrillo's home. We note that the district court's calculation included two 500-lb deliveries although it is not clear from Moore's testimony whether there were two deliveries of that size or whether Moore twice mentioned the one made at Thanksgiving 1989.
 
 
 6
 However, in spite of this uncertainty, we find that the district court's finding is not clearly erroneous. The El Paso records showed more than 1000 kilograms going to Martin, Moore, and"Lee," Martin's Georgia customer, in 1990 alone. Second, the district court correctly found that an additional eight to nine hundred pounds not relied on by the government, and not included in the district court's calculation, was relevant conduct. This amount was sold through East to Tony Langston, a Georgia customer who testified at trial, and was delivered to Langston at a building jointly owned by Martin, East, and Jackson.
 
 
 7
 We therefore affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED